**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| C.L.D., a minor, by and through<br>His Next Friend, LAVERNE DIXON,<br><br>           Plaintiff,<br><br>           v.<br><br>EDDIE BOYD, III, et al.,<br><br>           Defendants. | )<br>)<br>)<br>)<br>)    No. 4:08-CV-788 CAS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants Francis Slay, Julius Hunter, Vincent J. Bommarito, Todd H. Epsten, and Chris Goodson's, collectively the Board of Police Commissioners of the St. Louis Metropolitan Police Department (the "Police Board"), motion for summary judgment. Plaintiff opposes the motion and it is fully briefed. For the following reasons, the motion will be granted in part and denied in part.

**I.**     **Background**

On April 26, 2007, defendant Eddie Boyd, III, formerly with the St. Louis Metropolitan Police Department, allegedly used unlawful force and unlawfully arrested plaintiff Christopher L. Dixon after a fist fight near Sumner High School.[1] In his amended complaint, plaintiff alleges defendant Police Board deprived him of his civil rights in violation of 42 U.S.C. § 1983. More specifically, plaintiff alleges defendant Police Board failed to properly train and supervise defendant Boyd concerning the use of force to detain and arrest a suspect and failed to take preventative or

---

[1] Plaintiff filed this case as a minor, using his initials C.L.D. The Court granted plaintiff's motion for appointment of Next Friend, Laverne Dixon. Plaintiff has since reached the age of majority, and the parties refer to him by his proper name, Christopher Dixon.

remedial measures against defendant Boyd after it received notice of three prior complaints alleging Boyd assaulted juveniles. Plaintiff alleges this failure to take remedial action to train, instruct, and supervise Boyd amounts to deliberate indifference to his rights.

## II. Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In reviewing a motion for summary judgment, this Court is required to view the facts in a light most favorable to the non-moving party and to give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

**III.  Facts**

On April 26, 2007, plaintiff, a 16-year-old student at Sumner High School ("Sumner") returned to Sumner at approximately 4:00 p.m. after playing basketball at an after-school program. Plaintiff testified that a fist fight broke out on one of the activity buses parked outside the school, and many young men joined the fight. Plaintiff testified that he was seven or eight feet away from the bus during the fight, and was not involved in the fight. As the fight died down, plaintiff and several others walked away. Plaintiff testified that the police soon arrived, and he and his companions fled from the scene.

According to plaintiff, he ran for approximately half a block before slowing to a walk. After he began walking, plaintiff testified defendant Officer Boyd pulled up in his police vehicle, pointed

his gun out the window and told plaintiff "Freeze, if you move, I'll shoot." Plaintiff testified that Boyd then got out of his vehicle and approached him with his gun drawn. As Boyd began to holster his weapon, he suddenly hit plaintiff across the bridge of his nose and left eye with the barrel of the gun. Boyd then dragged plaintiff to the middle of the street by the hood of his sweatshirt, laid him face down in the street, and called for backup.

Plaintiff testified that he was conveyed by two other officers from the street to a nearby church parking lot where several police officers were located. He was then taken to Barnes-Jewish Hospital for medical treatment, including stitches, and then to the juvenile center. Plaintiff suffered a cut to his nose and two cuts near his left eye. He was released to his parents approximately thirty minutes after arriving at the juvenile center.

Police Procedure for Complaints Filed Against Police Officers

A complaint against an officer with regard to the use of force can be filed by either a citizen or by a police department employee with the Internal Affairs Division. If such a complaint is received, the complaint is investigated and a recommendation is made if discipline is warranted. If the discipline exceeds a 15-day suspension, the Chief of Police and the Police Board must approve the discipline. The Police Board also reviews any allegation concerning the use of deadly force involving a firearm, including striking an individual in the head with a firearm.

Defendant Officer Boyd's Prior History

Defendant Officer Boyd entered the St. Louis Police Academy in September 2002 and graduated in March 2003. After graduation, Officer Boyd was a probationary officer for approximately sixteen months. During that period, he had a trained officer with him at all times. Boyd was familiar with the use of force policy.

Officer Boyd was the subject of three Internal Affairs Division complaints for physical abuse of juveniles prior to the incident involving plaintiff. Based on the documents produced by the Police Board, attached as exhibits to the Declaration of Reiad M. Khouri, the facts surrounding these complaints are as follows:

<u>First Complaint:</u>  On November 29, 2004, Tanya Bailey filed a complaint that Officer Boyd brought her two juvenile sons home handcuffed. When she asked Officer Boyd what had happened, Boyd allegedly did not give her any details and threatened her with arrest. Ms. Bailey's sons told her that Officer Boyd had slapped the 14-year-old boy in the head. This complaint was not sustained, and no disciplinary action was taken.

<u>Second Complaint</u>: On November 15, 2005, two juvenile boys and their mothers filed a complaint that when the boys were stopped by police officers, including Officer Boyd, for allegedly looking into cars in a parking lot, the officers flourished their weapons and physically abused them. This complaint was not sustained, and no disciplinary action was taken.

<u>Third Complaint</u>: On April 12, 2006, Reida Thorton filed a complaint that Officer Boyd struck Jerica Thorton, a 12-year-old girl, in the head with a pistol after she interfered with the detention of her 13-year-old brother, Glen Reynolds. Ms. Thornton also complained that Officer Boyd unnecessarily drew his weapon during the off-duty confrontation with the juveniles. Finally, Officer Boyd was alleged to have filed a false report concerning the incident.

The third complaint was sustained. It was initially recommended that Officer Boyd be discharged and not eligible for rehire. That recommendation was changed to a 61-day suspension without pay and a reduction in rank to probationary patrol officer for six months. This reduction in rank resulted in a reduction in pay for Officer Boyd and the forfeiture of his rights to a trial before

the Police Board. Officer Boyd did not receive any remedial or additional training or increased supervision after this incident. On April 26, 2007, at the time of Officer Boyd's altercation with plaintiff, Boyd's rank was still probationary officer, and he was patrolling alone and unsupervised.

## IV. Discussion

Defendant Police Board moves for summary judgment, arguing that plaintiff cannot establish the Police Board's training procedures were inadequate and likely to result in a violation of plaintiff's constitutional rights. The Police Board also argues plaintiff cannot show a pattern of misconduct indicating that the Police Board's response to a regularly recurring situation was insufficient to protect the public's constitutional rights. In response to defendants' motion for summary judgment, plaintiff argues the Police Board is liable under § 1983 under two separate theories: (1) the Police Board has a custom and policy that creates a barrier to properly supervise its officers; and (2) the Police Board is liable because it failed to train and supervise defendant Officer Boyd. These theories are related, but distinct, and the Court will address each in turn.

### (1) Municipal Custom and Policy

As the Eighth Circuit outlined in Andrews v. Fowler, 98 F.3d 1069, 1074 (8th Cir. 1996), a local government may not be sued under § 1983 for an injury inflicted solely by its employee on a theory of respondeat superior. Id. (citing Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 694 (1978)). The Police Board may be subject to § 1983 liability for failing to act on complaints against police officers only if it had a "policy and custom" of failing to act upon prior similar complaints. Id. "There must exist a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." Id. (quoting Monell, 436 U.S. at 691).

As an initial matter, plaintiff's argument regarding municipal policy and custom is difficult to discern. Plaintiff has not delineated whether he asserts a unconstitutional "policy" or "custom" of the Police Board is at issue, and plaintiff uses these terms interchangeably. The Eighth Circuit carefully distinguishes between claims based on policy and those based on custom. See Kuha v. City of Minnetonka, 365 F.3d 590, 603-04 (8th Cir. 2003); Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). Moreover, plaintiff relies nearly exclusively on the case Rohrbough v. Hall, 2008 WL 4722742 (E.D. Mo. Oct. 23, 2008), for his argument that the Police Board had a policy and custom of failing to act on complaints of physical abuse, which plaintiff argues "creates a barrier to properly supervise its officers." In Rohrbough, however, the court found plaintiff did *not* make a cognizable claim under § 1983 on the theory of municipal custom and policy. Id. 2008 WL 4722742, **10-11. In fact, it granted the defendant Police Board summary judgment on this point. Id. Rather, the court found plaintiff had made a submissible case on his theory of failure to supervise. Id. at *13. Plaintiff's argument concerning municipal policy and custom combines this theory with the failure to supervise theory, making analysis of plaintiff's claims difficult.

Plaintiff appears to be arguing that the Police Board has a custom or policy of failing to investigate and act upon complaints regarding use of force of its employees. For support, plaintiff has produced evidence of the following: (1) of the 197 complaints of physical abuse submitted to the Internal Affairs Division in a five-year period, only 31 were sustained; (2) the Police Board does not review physical abuse complaints if the punishment recommended is less than a 15-day disciplinary suspension; and (3) Captain John Hayden, Commander of the Internal Affairs Division, testified that the Police Board has never asked for an internal affairs file that did not make it up the chain of command to the Police Board. Because plaintiff has not cited any official municipal policy that was

unconstitutional on its face or as implemented, the Court will review plaintiff's arguments as unconstitutional custom claims.

The Court finds that plaintiff's evidence fails to raise an issue of material fact as to whether the Police Board acted pursuant to an unconstitutional custom. To establish the existence of a governmental custom of failing to receive, investigate, and act upon complaints of violations of constitutional rights, a plaintiff must prove:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) That plaintiff was injured by the acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

See Thelma D. v. Board of Ed. of City of St. Louis, 934 F.2d 929, 932-33 (8th Cir. 1991) (citing Jane Doe "A" v. Special Sch. Dist. of St. Louis, 901 F.2d 642, 646 (8th Cir. 1990)); see also Williams v. City of Beverly Hills, Mo., 2006 WL 897155, *13 (E.D. Mo. Mar. 31, 2006).

Plaintiff has failed to submit evidence on each of the three elements. Captain John Hayden, Commander of the Internal Affairs Division, testified at deposition regarding the procedures used to investigate and review complaints of officer misconduct, including physical abuse. Captain Hayden testified that the process is initiated when a member of the public (or a fellow officer) makes a complaint about an officer. (Hayden Dep. at 12). If the complaint does not involve use of deadly force by firearm or projectile, the Commander in the district of the occurrence conducts an investigation into the complaint and make a recommendation. (Id. at 14-15). Captain Hayden

reviews these investigation files and the recommendation of the Commander. (Id. at 6-7). Captain Hayden uses the preponderance of the evidence standard of review. He either approves the Commander's recommendation or makes his own, and then submits the file to the Inspector of Police, a Colonel in the Police Department. (Id. at 7). It is within the authority of the Inspector of Police to issue up to 15 days of disciplinary suspension to an officer. A disciplinary suspension above 15 days must be approved by the Chief of Police and the Police Board. (Id. at 8).

If a complaint is not sustained, meaning that "it couldn't be discerned whether or not the complaint occurred or not," no discipline is recommended. (Id. at 43). The unsustained complaint is reviewed by Captain Hayden and is kept in the officer's file. (Id. at 27).

In addition, the Internal Affairs Division conducts some investigations itself. Any complaint regarding the use of deadly force by firearm or projectile is typically investigated by the Internal Affairs Division and the Homicide Division.[2] (Hayden Dep. at 14-17, 46-48, 63). Captain Hayden then issues a recommendation. All complaints regarding the use of deadly force involving a firearm or projectile are automatically reviewed by the Inspector of Police and the Chief of Police. (Id.). These complaints are also automatically reviewed by the Police Board. (Id. at 14-17, 48). Finally, Captain Hayden testified that the Internal Affairs Division provides an annual report of its statistics to the Police Board.[3] (Id. at 23).

---

[2]The definition of deadly force includes striking an individual with a weapon to the following areas of the body: head, face, neck, internal organs, genitalia, and spinal column. (Hayden Dep. at 63).

[3]It is unclear from the deposition testimony exactly which statistics are included in the annual report.

With regard to the number of complaints of physical abuse that were sustained in a five-year period, plaintiff has not shown the existence of any "continuing, widespread, persistent" pattern of unconstitutional misconduct by the police. Plaintiff has submitted evidence that in a five-year period, 31 of 197 complaints of physical abuse against officers were sustained. Plaintiff has submitted no evidence regarding the factual background of the unsustained complaints or any evidence that the investigations into these complaints were inadequate. For example, even as to the two unsustained complaints against Officer Boyd, plaintiff presents no evidence that the police failed to investigate these complaints or failed to sustain them despite credible testimony. Plaintiff submits only the bare numbers that 31 of 197 complaints of officer misconduct involving physical abuse were sustained. Implicit in plaintiff's argument is his belief that the percentage of unsustained complaints, alone, shows the Police Board ignores police misconduct.

Although the Eighth Circuit has held municipalities liable under Monell when the plaintiff has produced evidence of prior complaints sufficient to demonstrate that the municipalities and their official ignored police misconduct, those cases involve "detailed and compelling" evidence regarding prior misconduct and the city's failure to investigate or punish that conduct. See Mettler v. Whitledge, 165 F.3d 1197, 1205 (8th Cir. 1999) (citing Parrish v. Luckie, 963 F.2d 201, 204-05 (8th Cir. 1992) (reviewing the "detailed and compelling" evidence the plaintiff presented that the defendant police department avoided, ignored, and covered up complaints of physical and sexual misconduct by officers); Harris v. City of Pagedale, 821 F.2d 499, 501-06 (8th Cir. 1987) (finding plaintiff had proven a municipal custom through the presentation of detailed evidence regarding the particular police officer's previous misconduct, and the city's failure to investigate or punish that conduct)). As a matter of law, plaintiff's evidence that 31 of 197 complaints of physical abuse were

sustained is not adequate to demonstrate a continuing, widespread, persistent pattern. See Mettler, 165 F.3d at 1204-05. As the Eighth Circuit stated, "[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." Id. at 1205.[4]

To establish an unconstitutional custom, plaintiff also relies on evidence that the Police Board does not review any physical abuse complaint if the disciplinary action is less than a 15-day suspension. This argument is factually incorrect. As Captain Hayden testified, the Police Board automatically reviews all complaints regarding the use of deadly force. (Hayden Dep. at 16-17, 47-48). Deadly force includes any discharge of a firearm; and any strikes with a weapon to the head, face, neck, internal organs, genitalia, and spinal column. (Id. at 63). In addition, the Police Board reviews any complaint in which an officer receives more than a 15-day suspension. In fact, the Police Board reviewed a prior complaint of physical abuse brought against Officer Boyd. Had Officer Boyd not resigned from the Police Department shortly after plaintiff's complaint was filed, the Police Board would have reviewed plaintiff's complaint because it involved the use of deadly force. Finally, the Police Board reviews an annual report of the Internal Affairs Division's statistics.

In addition, even assuming plaintiff's argument was factually correct, plaintiff offers no evidence regarding what types of officer misconduct receives a lesser discipline, i.e., less than 15 days suspension, versus a greater discipline, i.e., greater than 15 days suspension. Plaintiff has submitted

---

[4]Plaintiff's argument relies almost exclusively upon Rohrbough v. Hall, 2008 WL 4722742 (E.D. Mo. Oct. 23, 2008), which is legally and factually distinct. As noted above, this district court *granted* the Police Board summary judgment on plaintiff's § 1983 claim that municipal custom and policy caused a constitutional violation. In denying the Police Board summary judgment on a separate claim, plaintiff's failure to supervise, the court cited, inter alia, evidence that in a five-year period only 1 of 322 physical abuse claims were sustained.

no information from which the Court could base a conclusion that it is an unconstitutional custom of the Police Board to review only those investigations in which the recommended discipline is a suspension of greater than 15 days, because the Court has no information regarding what complaints receive what discipline. Therefore, the Court has no information regarding the types of complaints that are not being reviewed. Like plaintiff's prior argument relying on the bare numbers of sustained complaints, this argument lacks the type of specific facts that would allow the Court to find an unconstitutional custom. Plaintiff's evidence regarding the Police Board's review of complaints is factually incorrect and fails to establish any of the three elements necessary to prove a municipal custom of constitutional violations.

Finally, plaintiff attempts to establish an unconstitutional custom claim based on the fact that the Police Board had never asked Captain Hayden for any Internal Affairs Division files that did not automatically make it up the chain of command. Because the Police Board automatically reviews any complaint of the use of deadly force involving a firearm or projectile and any complaint in which the recommended discipline exceeds a 15-day suspension, the category of complaints that do not make it up the chain of command consists only of complaints of physical abuse in which the recommended discipline is less than a 15-day suspension. Thus, plaintiff's third argument is identical to his second argument, i.e., the Police Board's custom of only reviewing complaints in which the recommended discipline is greater than 15-day suspension is unconstitutional. While the third argument is phrased in terms of the "Police Board has never asked to see these other files," the argument is the same and the Court has already found it unpersuasive.

The entire argument regarding which investigation files are reviewed by the Police Board appears to mirror an argument made in the Rohrbough case, in which the district court, under

- 12 -

different facts, granted the Police Board's motion for summary judgment on its municipal custom and policy claims. Rohrbough, 2008 WL 4722742 at ** 12-13. Here, the Court comes to the same decision with respect to plaintiff's claims of an unconstitutional municipal policy and custom. The Court finds that plaintiff's evidence fails to raise an issue of material fact as to whether there was an unconstitutional custom and policy concerning the misconduct by police officers within the St. Louis Municipal Police Department. Defendant Police Board is entitled to summary judgment on this claim.

(2) <u>Failure to Train and Supervise</u>

Plaintiff asserts in Count I that defendant Police Board "failed . . . to properly and adequately train, supervise, equip, regulate and direct defendant Officer Boyd" regarding policies on the detention and arrest of individuals. Plaintiff also alleges the Police Board failed to take any preventative or remedial measures to guard against physical abuse by Officer Boyd, which amounted to deliberate indifference and directly caused plaintiff's injuries. (Compl. at ¶¶ 21-24). Plaintiff narrows this argument in his summary judgment papers, arguing that the Police Board is liable for inadequate training or supervision, based on the Police Board's failure to take remedial action to train, instruct, and supervise Officer Boyd after it received notice of three prior complaints alleging physical abuse of juveniles. (Pl. Opp'n at 5-8). Plaintiff alleges the Police Board therefore was deliberately indifferent to the risk of a constitutional violation, which caused the violation of plaintiff's constitutional rights. Id. at 7-8.

(a) Failure to Train

Under <u>Monell</u>, a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. See <u>Monell</u>, 436 U.S. at 690; <u>see also</u> <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 394 (1989) (O'Connor, J., concurring). The Supreme Court has clearly stated that "there are limited

circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." City of Canton, 489 U.S. at 387. "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. To establish a failure to train claim, a plaintiff must show that the defendant had notice its procedures were inadequate and likely to result in a violation of constitutional rights. See id. at 396 (O'Connor, J., concurring). A failure to train claim may also arise from a pattern of constitutional violations which put the government on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens. Id. at 397 (O'Connor, J., concurring); see also Thelma D., 934 F.2d at 934-35.[5]

Plaintiff argues defendant Police Board is liable for defendant Officer Boyd's alleged constitutional violation based on the second theory—a pattern of constitutional violations put the Police Board on notice that Officer Boyd often reacted in a manner contrary to constitutional requirements. (Pl. Opp'n at 7-8). The crux of plaintiff's failure to train claim is that the Police Board approved the recommendation that Officer Boyd receive a 61-day disciplinary suspension and a reduction in rank of probationary officer after it reviewed the complaint of juvenile abuse brought on behalf of Jerica Thornton, but Officer Boyd received no remedial instruction or training.[6] Viewing

---

[5]Plaintiff misstates the standard for a § 1983 failure to train claim, citing to Parris v. Huttie, 2007 WL 2434058 (W.D. Mo. 2007). Plaintiff's cited standard is for finding individual defendants subject to personal liability as supervisors. See Jane Doe A. v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990).

[6]It is undisputed that the Police Board would not have received notice of Officer Boyd's two prior unsustained complaints at the time these complaints were filed. Because they were unsustained and resulted in no disciplinary action, the Police Board would not have reviewed the complaints. The Court has already found that plaintiff has not established an unconstitutional custom based on the Police Board's custom of not reviewing this category of complaints. See supra, Part IV.1.

the evidence in the light most favorable to plaintiff, the Court finds that plaintiff's evidence falls short of establishing the high degree of causation and fault on the part of the Police Board required to establish municipal liability for failure to train under § 1983.

In support of its motion for summary judgment, the Police Board submits the affidavit of Sargent Christopher Blake Tucker, the Chief Defensive Tactics Instructor for the St. Louis Police Department.[7] According to Sgt. Tucker, since 1996, all commissioned officers in the St. Louis Metropolitan Police Department undergo 880 hours of academy training, including a 72 hour block of training in defensive tactics. These tactics include the use of force policy, redirection of force, subject control, handcuffing, ground defense, pepper spray, taser, and baton training. The use of force training includes instruction in a use of force index that details a progression of force from the least amount of force necessary to the use of deadly force. This training also includes instruction in the constitutional limitations regarding an officer's use of force. The use of force training also includes training that officers are to use the least amount of force reasonably necessary. Since at least 1996, commissioned officers have received continuous education training ("CET") on an annual basis. This CET training includes training in handgun retention, pepper spray, and baton and sometimes includes additional training in subject compliance and control, ground fighting and ground defense. Commissioned officers are required to review the use of force policy on a monthly basis.

As the Supreme Court has stated, the focus of a failure to train inquiry "must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city,

---

[7]Plaintiff did not contest the facts contained in Sgt. Tucker's affidavit. Plaintiff's response was that the facts were "immaterial for purposes of this motion." Pursuant to Local Rule 4.01(E), the Court will deem the facts admitted.

for the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton, 489 U.S. at 390-91. For liability to attach, the identified deficiency in a city's training program must be "closely related to the ultimate injury." Id. at 391.

Here, plaintiff does not argue that the Police Board's standard training procedures are inadequate. (Pl. Resp. at 7). In fact, there is no factual basis in the record to conclude that the training offered by the St. Louis Metropolitan Police Department to its officers was constitutionally deficient. Rather, plaintiff argues that Officer Boyd should have received *additional* training after the Police Board received notice of his three complaints of physical abuse of juveniles.

It is uncontested that Officer Boyd was familiar with the use of force policy at all times while he was a St. Louis Metropolitan Police Officer. Without minimizing the gravity of the injury suffered by plaintiff, the Court finds that plaintiff's contention that the Police Board should have offered additional remedial training to Officer Boyd does not establish a genuine issue of material fact on his failure to train claims. Viewing the facts in the light most favorable to plaintiff, Officer Boyd intentionally used deadly force on an unarmed, nondangerous, and nonresistent 16-year-old boy whom Officer Boyd might have suspected was involved in a fist fight on a school bus. The Court cannot conclude that any deficiency in training actually caused Officer Boyd's conduct. Similar to the Eighth Circuit's finding in Andrews v. Fowler, 98 F.3d at 1077, plaintiff cannot demonstrate the "close relationship" necessary to conclude that the Police Board's alleged failure to properly train Officer Boyd caused him to physically assault plaintiff with deadly force. Id.

      (b)     Failure to Supervise

A municipality may also be liable under § 1983 for failure to supervise its employees. A failure to supervise claim "may be maintained only if a defendant demonstrated deliberate indifference

or tacit authorization of the offensive acts." Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (quoted case omitted). "Thus, as with the failure to train claim, this claim is governed by the deliberate indifference standard." Id. Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. See Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 410 (1997).

The Court finds that plaintiff has met his burden of establishing facts upon which a reasonable jury could find deliberate indifference or tacit authorization by the Police Board with respect to plaintiff's claim for failure to supervise. It is uncontested that less than a year before the instant offense, the Police Board had notice that Officer Boyd had two prior unsustained complaints of physical abuse of juveniles and one prior sustained complaint of using unlawful deadly force against a juvenile. Specifically, Officer Boyd drew his weapon and struck Jerica Thornton, a 12-year-old girl, in the head with his pistol after she attempted to help her 13-year-old brother, who Officer Boyd had physically tackled. According to the Internal Affairs Division investigation, the incident arose after Officer Boyd met with Jerica's school principal and had her suspended from school. Officer Boyd then waited for Jerica at her school bus stop, which was located in front of Officer Boyd's home. The two engaged in a verbal altercation, and Boyd began to follow Jerica and her brother home. They engaged in a physical altercation, and when Jerica's brother came to her aid, Officer Boyd tackled him and held him to the ground with his pistol in the air. When Jerica came to her brother's aid, Officer Boyd struck her in the head with his pistol.

Following an investigation, the Internal Affairs Division sustained the complaint and recommended that Officer Boyd be "dropped from the Department rolls and not eligible for rehire." This recommendation was altered at some point, presumably on review by either the Inspector of

Police or the Chief of Police, and the new recommendation was a 61-day disciplinary suspension and a reduction in rank to a probationary officer for six months. Because he had already served his 61-day suspension during the Internal Affairs Division investigation, Boyd immediately returned to patrol in November 2006.

Although he was reduced in rank to a Probationary Officer, Officer Boyd was allowed to patrol unsupervised immediately after the Internal Affairs Division completed its investigation. In its uncontested material facts, the Police Board states: "[D]uring an officer's initial 90 days as a probationary police officer after graduating from the academy, he or she is not permitted to patrol alone but rather must patrol with a training officer. In addition, a probationary officer will patrol with a training officer after the 90 day period as needed." (Def. SOF at ¶ 23). Despite knowledge that Officer Boyd had two prior unsustained complaints of physical abuse of juveniles; despite knowledge that he had pistol-whipped a 12-year-old girl after pulling his gun on her 13-year-old brother; and despite Officer Boyd's demotion to the rank of Probationary Officer, the Police Board allowed Officer Boyd to immediately return to patrol alone and unsupervised. The assault of plaintiff occurred while Officer Boyd was on probation for the assault of Jerica Thornton. Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find deliberate indifference or tacit authorization by the Police Board with respect to plaintiff's claim for failure to supervise. Additionally, a reasonable jury could conclude that the Police Board's failure to properly supervise Officer Boyd caused the offending conduct. Defendant Police Board's motion for summary judgment should therefore be denied on plaintiff's failure to supervise claim.

**Conclusion**

For the foregoing reasons, the Court concludes that defendant Police Board's motion for summary judgment should be granted in part and denied in part on plaintiff's claims under 42 U.S.C. § 1983. The motion will be granted as to plaintiff's claim of unconstitutional custom and policy and plaintiff's claim of failure to train; the motion will be denied as to plaintiff's claim of failure to supervise.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Vincent J. Bommarito, Todd H. Epsten, Christopher Goodson, Julius Hunter, and Francis Slay's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. [Doc. 68] The motion is granted as to plaintiff's claims brought pursuant to pursuant to 42 U.S.C. § 1983 for unlawful custom and policy and failure to train. The motion is denied as to plaintiff's claim brought pursuant to 42 U.S.C. § 1983 for failure to supervise.

An appropriate Partial Judgment will accompany this Memorandum and Order

                              **CHARLES A. SHAW**
                              **UNITED STATES DISTRICT JUDGE**

Dated this 11th day of June, 2010.