IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| C.L.D., a minor, by and through His Next Friend, LaVERNE DIXON, <br><br> Plaintiff, <br><br> v. <br><br> EDDIE C. BOYD, III, et al. <br><br> Defendants. | ) ) ) ) ) ) Case No.: 4:08-CV-788CAS ) ) ) ) ) |

## DEFENDANT EDDIE C. BOYD'S TRIAL BRIEF

COMES NOW Defendant, Eddie C. Boyd, III, and hereby submits Defendant Eddie C. Boyd's Trial Brief and in so doing, states as follows:

### I. Factual Background

Plaintiff Dixon asserts deprivation of civil rights, false arrest, and assault and battery claim against Officer Boyd for injuries allegedly arising out of an incident that occurred on April 26, 2007 around Sumner High School in St. Louis, Missouri. *See* Amended Complaint for Damages ¶¶ 10 and Counts I-IV. On April 26, 2007, Plaintiff, who is now no longer a minor, was a student at Sumner High School in St. Louis, Missouri. (Dixon 8). On April 26, 2007, Boyd was a police officer employed by the Saint Louis Metropolitan Police Department. (Boyd 12).

Gangs and gang activity exist in and around the Sumner High School area. (Dixon 21, Boyd 133). On April 26, 2007, a large gang fight erupted outside Sumner High around a bus stop located adjacent to the High School. (Dixon 20). In response to the dangerous gang fight, a Sumner High School security guard called for aid from the Saint Louis Metropolitan Police Department. (Dixon 24).

Officer Boyd was dispatched to and arrived at the area where the fight was taking place on the bus across from Sumner High. (Dixon 25; Boyd 40). Officer Boyd testified that a large fight was still in progress when he arrived. (Boyd 40).

At least seven to ten individuals ran when he arrived at the scene of the fight, including Dixon. (Boyd 26, 41). Dixon stated in his deposition testimony that he made the decision to engage in the highly dangerous activity of running from the police following the gang fight. (Dixon 74). Dixon also admitted that when he and his group ran from the fight location around Sumner High that it was a chaotic scene. (Dixon 79).

Officer Boyd drove his patrol car in pursuit of the group of fleeing suspects from Dixon's group. (Boyd 43). He approached Jurkeem Jones ("Jones") and Tevin Price ("Price"), two of the individuals that ran from police following the fight. (Boyd 45). The names of the subjects were unknown to Officer Boyd at the time. (Dixon 34). Jones and Price stopped running when Officer Boyd issued verbal commands from inside his patrol car. (Boyd 47-48). Officer Boyd asked their names, what school they attended, and what they were doing in the area. (Boyd 46).

Officer Boyd had two pairs of handcuffs on his person and two pairs of handcuffs in his patrol car. (Boyd 49). He detained Jones and Price and placed one pair of handcuffs on each individual's wrists. (Boyd 49). He then placed Jones and Price in the back of the patrol car. (Boyd 49).

Dixon and other members of the group continued running while Officer Boyd detained Jones and Price. (Boyd 51). Officer Boyd never lost visual contact with Dixon and the other members of his group. (Boyd 51). Officer Boyd yelled commands at the

fleeing group members to stop running. (Boyd 53). The fleeing group members, including Dixon, did not stop fleeing. (Boyd 54).

Officer Boyd re-entered his patrol car and continued to pursue the scattered group members. (Boyd 54). One member of the group kept running in a straight line at the same time most of the group split off and ran in another direction. (Boyd 51). Officer Boyd later learned that the individual who ran in a straight line was Dixon. (Boyd 52). From his patrol car, Officer Boyd issued a command directed at Dixon to stop running from him. (Boyd 55).

Upon running from the fight scene, Dixon jumped a fence encircling the Sumner High School football field. (Dixon 27-28). Officer Boyd visually followed Dixon as he hopped over the fence. (Boyd 53). Dixon continued to run and subsequently fell to the ground. (Dixon 76). Officer Boyd saw Dixon fall to the ground while running. (Boyd 54). Dixon admitted in his deposition testimony that he fell onto his head due to the wet condition of the ground. (Dixon 76). Dixon admitted that he caused a physical injury to his own head as a result of the fall. (Dixon 95).

Dixon testified that he stood back up and began walking after he fell. (Dixon 77). Officer Boyd testified that he visually saw Dixon stand up and continue running after he fell. (Boyd 54). Officer Boyd drove to the area where Dixon was located and stopped his patrol car. (Dixon 31). Dixon was located less than a block away on the passenger's side of Officer Boyd's patrol car at the time Boyd parked the police car. (Boyd 55).

Officer Boyd testified that he issued a verbal command to Dixon from inside his patrol car. (Boyd 57). Officer Boyd testified that he then opened his driver's side door,

exited, and then drew his weapon. (Boyd 57; 59). Officer Boyd testified that Dixon did not stop and continued to flee from Officer Boyd's direction. (Boyd 59).

Officer Boyd initially began his foot pursuit of Dixon with his weapon drawn. (Dixon 33; Boyd 59). Officer Boyd testified that he could not see Dixon's hands and was concerned for his own safety. (Boyd 57). Officer Boyd testified that the gun was pointed at a 45-degree cover angle toward the ground in adherence with department policy. (Boyd 57). The weapon was not pointed at Dixon. (Boyd 58).

Once Officer Boyd visually confirmed that Dixon was not armed, he modified his ground approach toward the suspect. (Boyd 59). It is an uncontested fact that Officer Boyd lowered his weapon. (Dixon 33; Boyd 59). Dixon testified that Officer Boyd lowered his gun to put it in the holster on his utility belt. (Dixon 33). Officer Boyd testified that he lowered his weapon and, in fact, secured the weapon in the holster on his utility belt. (Boyd 59).

Officer Boyd testified that, after he secured the gun in its holster, he removed one pair of black handcuffs and held them in his hand. (Boyd 59). Officer Boyd testified that he attempted to handcuff Dixon. (Boyd 65). Dixon resisted Officer Boyd's first attempt to handcuff him and struck Officer Boyd in the stomach. (Boyd 65). Officer Boyd attempted to apply handcuffs a second time when Dixon raised his fists and again resisted. (Boyd 66-68). Officer Boyd never gained control of Dixon's wrists. (Boyd 68).

Officer Boyd testified that he slipped on wet grass and fell forward while attempting to handcuff Dixon. (Boyd 66, 68). Officer Boyd testified that Dixon was struck in the head as he slipped forward on the wet ground while trying to effectuate the arrest. (Boyd 68). Dixon provided testimony as follows:

4

>    Q.   Tell me why you believe he intended to hit you in the face with the gun.
>    A.   I don't believe he intended to hit me in the face. It just happened. I didn't know what was going to happen.
>    Q.   Right. Now, you said he was reaching down. Did you see what else was in his holster at the time he was reaching down?
>    A.   He had his gun looking like he was about to put it in the holster.

(Dixon Deposition, p. 81).

The evidence will show that Officer Boyd did not intend to hit Dixon in the face. (Dixon 81; Boyd 68). Dixon admitted in his deposition testimony that Officer Boyd did not intend to strike him. (Dixon 81). Officer Boyd stated in his deposition testimony that Dixon was inadvertently struck. (Boyd 68). The evidence will show that the ground on which Officer Boyd and Dixon were standing was wet. (Dixon 37). Dixon admitted in his deposition testimony that the ground was wet and that he himself had previously fallen due to the conditions on the ground. (Dixon 37, 76).

It is an uncontested fact that Dixon was struck one time in the face. (Dixon 86; Boyd 68). Dixon testified he was struck on the bridge of his nose. (Dixon 36). Dixon testified that the barrel of Officer Dixon's gun struck him. (Dixon 35-36). Officer Boyd testified that a pair of handcuffs, not a gun, struck Dixon. (Boyd 59).

After being struck, Dixon put his hands to his face and fell to the wet ground. (Dixon 37; Boyd 71). Officer Boyd testified that after Dixon fell to the ground that he handcuffed Dixon's hands behind his back. (Boyd 71). Officer Boyd testified he saw drops of blood. (Boyd 71). Boyd then called for backup on his miniature radio. (Boyd 73). Officer Boyd testified that Dixon sat up on his own accord and that Officer Boyd then helped Dixon stand up all the way. (Boyd 73). Officer Boyd then walked Dixon to the patrol car. (Boyd 73-74).

Officer Boyd testified that he and Dixon were standing next to the patrol car when he asked if Dixon was okay. (Boyd 76). Dixon responded that his eye hurt. (Boyd 76). Officer Boyd testified that he examined Dixon for injuries. (Boyd 76).

Police Officers Ellis and Wilderson responded to Officer Boyd's call for backup. (Boyd 82). Officer Boyd requested that Officers Ellis and Wilderson take custody of Dixon in compliance with department procedure. (Boyd 84). Officers Ellis and Wilderson then transported Dixon to a nearby church lot where other officers were gathered to counsel and release suspects detained in the aftermath of the fight. (Dixon 43).

With regard to his injuries, Dixon testified that he did not lose consciousness, did not receive any follow-up medical care, did not see any doctor after the hospital visit with officers to get stitches, did not have any nausea, vomiting or dizziness following the incident and was deemed fit for confinement. (Dixon 79, 90-91).

## II. Argument

When stating a claim under Section 1983, plaintiff must establish (1) the deprivation of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation was committed under "color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1998).

### 1. Constitutionally Excessive Force

A Section 1983 claim for constitutionally excessive force requires a deprivation of a clearly established constitutional right. Deprivation of a Fourth Amendment right by and through a seizure of person or property requires a strong showing of intent to make the physical deprivation. Even where there is an intentional seizure by physical force,

there is no Section 1983 violation if the seizure is effectuated in an objectively reasonable manner. *McCoy v. City of Monticello,* 411 F.3d 920 (8th Cir. 2005).

As the evidence will show, Defendant Boyd is entitled to judgment on plaintiff's excessive force claim because Officer Boyd's use of force was not excessive and did not violate Plaintiff's clearly established rights. Defendant Boyd simply did not intend to strike Plaintiff and employed objectively reasonable methods in attempting to effectuate the arrest of Plaintiff.

>    i.   **Unintentionally Inflicted Injury Does Not Substantiate an Excessive Force Claim under § 1983**

The Court analyzes excessive force claims in the context of seizures under the Fourth Amendment, applying its reasonableness standard. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). A seizure requires an intentional act by an officer and does not address "accidental effects of otherwise lawful governmental conduct." *McCoy v. City of Monticello,* 411 F.3d 920 (8th Cir. 2005). "Negligent, accidental or unintentional conduct that has the coincidental effect of producing a seizure will not substantiate an excessive force claim." *Brower v. County of Inyo,* 489 U.S. 593, 596 (1989). "It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement [], nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement [], but only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97. (italics in original)

Defendant Boyd testified that he slipped on the wet ground during the course of effectuating the arrest of Plaintiff. Further, Plaintiff admitted, and Defendant Boyd also

testified, that as Officer Boyd slipped due to the wet ground conditions, he did not intend to strike Plaintiff.  (Dixon 80-82).  Further, Officer Boyd did not intentionally strike Plaintiff.  (Dixon 80-82).  While Officer Boyd was arguably negligent in slipping and striking Dixon, such conduct does not rise to the level of a constitutional violation.  Dixon admitted in his deposition that Officer Boyd's conduct in striking him was accidental.  (Dixon 81).  Further, the fact that Officer Boyd struck Dixon only one time further provides evidence of the accidental nature of the conduct at issue.

### ii. The Use of Force was Objectively Reasonable

Even if, contrary to Plaintiff's deposition testimony, Officer Boyd intended to strike Plaintiff, his use of force was objectively reasonable and thus would not violate Plaintiff's Fourth Amendment rights under Section 1983.

"An arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989).  Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. "Claims that law enforcement officers have used excessive force during an arrest or other seizure are analyzed under the Fourth Amendment and its 'objective reasonableness' standard." *Id*. at 395.

Looking to the particular facts and circumstances of each case, courts may consider "whether [the Plaintiff] is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396. Further, "[c]ourts should review excessive force claims from the perspective of 'a reasonable officer on the scene,' 'at the moment' the force was employed; and should be mindful that 'police officers are often forced to make

split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." *Moore v. Higgins*, (E.D.Mo. 5-29-2008) (quoting Graham, 490 U.S. at 396-397).

The evidence will show that Plaintiff actively resisted arrest by evading the officer's hands, subsequently striking Officer Boyd in the midsection. Defendant Boyd attempted to effectuate an arrest during a tense, uncertain, and rapidly evolving circumstance. Defendant Boyd used an objectively reasonable level of physical force in effectuating the arrest by reaching for Plaintiff's hands to place them in handcuffs, resulting in the accidental impact to Plaintiff. The evidence will not satisfy Plaintiff's burden of proving use of excessive or unreasonable force.

**2.     Assault**

An assault is defined as "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating fear of imminent peril." *Geiger v. Bowersox*, 974 S.W.2d 513, 516 (Mo.App. 1998). Under Missouri law, an assault claim requires proof of: (i) intent to cause bodily harm or offensive contact, or apprehension of either; (ii) conduct indicating such intent; and (iii) a resulting apprehension of bodily harm or offensive contact on the part of the plaintiff. *Phelps v. Bross,* 73 S.W.3d 651, 656 (Mo.App. 2002) (quoting M.A.I. 23.01)).

As the evidence will show, Plaintiff cannot establish these elements. Plaintiff admitted that Officer Boyd did not intend to strike him. (Dixon 80-82). Plaintiff admitted that he slipped on the wet ground prior to Officer Boyd slipping and accidentally striking Plaintiff. (Dixon 81). Therefore, because the evidence will show Plaintiff cannot as a matter of law meet several elements of his claim for assault, judgment should be granted in favor of Officer Boyd on Plaintiff's state law claim of assault.

### 3.     Battery

A battery is an intended, offensive bodily contact with another person. *Geiger v. Bowersox*, 974 S.W.2d 513, 516 (Mo.App. E.D. 1998) (citing *State ex rel. C.S. v. Dowd*, 923 S.W.2d 444, 449 (Mo.App. E.D. 1996)). The evidence will show that Officer Boyd did not intend to strike Plaintiff.  (Dixon 81).  Defendant Boyd accidentally and unintentionally struck Plaintiff as Officer Boyd slipped on the wet ground and Plaintiff acknowledged this fact as true.  (Dixon 80-82).  Since Boyd did not intend to strike Plaintiff, this jury will not find that a battery occurred. Therefore, judgment should be granted in favor of Officer Boyd on Plaintiff's state law battery claim.

### 4.     False Arrest

#### i. Claim for False Arrest under § 1983 and Missouri Law

A false arrest occurs when there is confinement without legal justification. *Kurtz v. City of Shrewsbury,* 245 F.3d 754, 757 (8th Cir. 2001). "A false arrest claim under Section 1983 fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury,* 245 F.3d 754, 758 (8th Cir. 2001).

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed … an offense." *Flynn v. Brown,* 395 F.3d 842, 844 (8th Cir. 2005). The reasonable belief by a defendant that the plaintiff committed a criminal offense is a complete defense to the claim of false arrest. *Kurtz*, 245 F.3d at 758 (citing *Edwards v. McNeill,* 894 S.W.2d 678, 683 (Mo. App. 1995).

Officer Boyd had probable cause to arrest Plaintiff for involvement in a gang fight, assault and battery, evading arrest, causing a peace disturbance, and resisting arrest

10

in violation of Missouri law. Since Officer Boyd reasonably believed that he had probable cause to effectuate an arrest, he has a complete defense to claims of false arrest.

Therefore, the evidence will show judgment should be granted in favor of defendant Boyd on Plaintiff's federal and state claims of false arrest.

### ii.     Official Immunity under Federal and Missouri State Law

Even if this Court had doubts as to whether Defendant Boyd actually had probable cause to effectuate an arrest of Plaintiff, the evidence will show that he is entitled to official immunity from suit because the decision to arrest is a discretionary decision entitling him to official immunity.  See, e.g., *McCaslin v. Wilkins*, 183 F.3d 775 (8th Cir. 1999); *Creighton v. Conway,* 937 S.W.2d 247, 250 (Mo.App. E.D. 1996).

The doctrine of qualified immunity shields government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *McCaslin v. Wilkins*, 183 F.3d 775 (8th Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Public officials are permitted to claim that their actions were objectively reasonable in light of their knowledge at the time of the incident." *Lyles v. City of Barling*, No. 98-2788, slip op. at 5 (8th Cir. 1999). "As a governmental official, Officer [Boyd] is shielded from liability for torts arising out of his discretionary acts or omissions." *Creighton v. Conway,* 937 S.W.2d 247, 250 (Mo.App. E.D. 1996).

Defendant Boyd had a reasonable belief at a chaotic scene that particular individuals, including the Plaintiff, were involved in a gang fight, committed assault and battery, were actively evading arrest and caused a significant peace disturbance.

11

Therefore, as the evidence will show, Defendant Boyd is protected from liability under Federal and Missouri law in performing such discretionary acts.

## IV.  Conclusion

For the foregoing reasons, the evidence will show Defendant Boyd is entitled to judgment with regard to each of Plaintiff's claims.

Respectfully Submitted,


By:     Kevin J. Dolley    s/s
Kevin J. Dolley, USDC #117137
Law Offices of Kevin J. Dolley, LLC
7750 Clayton Road, Suite 102
St. Louis MO 63117-1343
(314)645-4100 (office)
(314)645-7901 (fax)
kevin@dolleylaw.com

*Attorney for Defendant Eddie C. Boyd, III*

## **CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court on June 23, 2010 to be served by operation of the Court's electronic filing system, upon the following:

Robert J. Isaacson
Assistant Attorney General
Old Post Office Building
815 Olive, Suite 215
St. Louis, Missouri 63188

Matthew J. Devoti
Reaid M. Khouri
CASEY AND DEVOTI, P.C.
100 North Broadway, Suite 1000
St. Louis, Missouri 63102

                   Kevin J. Dolley  s/s